IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD J. O'NEILL, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 97-2141 |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| O'NEILL, J. | : | December 12, 2006 |

**<u>MEMORANDUM</u>**

Plaintiffs filed this lawsuit on March 25, 1997 alleging that defendants, the City of

Philadelphia, Commissioner Richard Neal, Detective Robert Ballentine, Jr., Detective Gerald

Robison, Detective Richard Bova, Detective Robert Morris, and multiple "John Doe" police

officers,[1] violated their constitutional rights as a result of searches that occurred at the home of

the plaintiff Bernard John O'Neill.  Before me now is defendants' motion to dismiss, plaintiffs'

response, and defendants' reply thereto.

BACKGROUND

This case arose after three searches incident to a valid Warrant of Arrest for Jason O'Neill

(a/k/a Jason Raffa), the stepson of one of the plaintiffs in this action, Bernard John O'Neill.

Jason committed a triple homicide by arson on March 26, 1995.  An arrest warrant was issued on

April 27, 1995 based on an Affidavit of Probable Cause provided by Detective Richard Bova of

the Philadelphia Police force.  The warrant listed Jason's last address as 2910 S. 61st Street in

Philadelphia, less than half a mile from the scene of the triple homicide and the address of

_____

[1] Due to unreasonable delay and substantial hardship to the defendants, I denied plaintiffs'
motion to amend the complaint to add the names of the individual officers on November 15,
2006, nine years after the complaint was filed and five years after it was removed from suspense.

Bernard O'Neill and his family.  After committing the crime, Jason fled to Florida.

Police attempted to execute the arrest warrant at 2910 S. 61st Street on three separate occasions, May 30, 1995, June 12, 1995, and November 23, 1995.  Each search occurred in the morning sometime between 6.30 and 7.00 a.m. and, according to the police, was based on reliable information that Jason recently had been seen in the neighborhood.  The complaint stems primarily from the third arrest attempt.

That attempt occurred on Thanksgiving morning and there were multiple guests staying in the house.  According to Bernard O'Neill's 911 calls[2] and plaintiffs' statements to internal affairs, defendants used the Stakeout Unit to enter the O'Neill residence.  The police officers who entered the residence were wearing black fatigues, black vests, and black helmets and were carrying shotguns.  Around eight officers forcibly entered the house, grabbed Bernard O'Neill by the neck, and ordered him to sit on the couch. The officers, with guns drawn, also ordered most of the other occupants of the house downstairs into the living room.

At that point, the officers searched the rest of the house.  Officers searching upstairs used flex cuffs to handcuff Chad Brumbaugh, a visitor in the house who resembled Jason.  Other officers went to the basement where they confronted Michael Coyle, Bernard and Linda O'Neill's fourteen-year-old son.  One of the officers pointed a gun inches from Michael's head and ordered him to roll off his bed.  When they began questioning Michael about Jason, Bernard O'Neill yelled downstairs that Michael was only a minor and that police could not question him without a parent being present.  Eventually detectives arrived and Brumbaugh was released from

---

[2]Police records show that during the search, Bernard O'Neill made ten 911 calls, from 6:43 a.m. to 8:49 a.m., requesting the presence of a supervisor.

his handcuffs.  As officers were leaving, one yelled out that they would be back at Christmas.

While the Stakeout Unit was entering the O'Neill residence, Detectives Ballentine and Robison were searching for Jason in Delaware County, Pennsylvania.

Plaintiffs' original complaint alleged multiple violations of the United States Constitution and the Pennsylvania Constitution and also included Pennsylvania state law claims.  In their response to defendants' motion for summary judgment, plaintiffs conceded their §§ 1981, 1985 and 1986 claims, their claims relating to rights under the Fifth, Sixth, Eighth, and Thirteenth Amendments, and their claims under the Pennsylvania Constitution.  Plaintiffs do not concede their Fourth Amendment Claims[3] and their state law claims for (1) assault and battery; (2) false imprisonment; and (3) intentional infliction of emotional distress.

In their response, plaintiffs do not offer any facts supporting a finding that Commissioner Richard Neal[4] or Lieutenant Robert Morris,[5] acting under state law, deprived plaintiffs of any federal rights or committed any intentional torts against them, so I will grant summary judgment to Neal and Morris on plaintiffs' claims against them.

---

[3]Plaintiffs' do not have separate Fourteenth Amendment claims; the Fourteenth Amendment incorporates the Fourth Amendment and applies it to the states.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).

[4]Plaintiffs offer no facts to support any claim against Commissioner Neal in his individual capacity.  In their response to the motion for summary judgment, plaintiffs do not even mention Commissioner Neal.

[5]In his original complaint, Bernard O'Neill also alleges that he was arrested and detained by Lieutenant Morris on December 5, 1995.  On that day, Bernard O'Neill met with Lieutenant Morris of the Internal Affairs Department of the Philadelphia Police Department to provide a statement regarding the May, June, and November searches.  In their motion, defendants state that Bernard O'Neill was not arrested because he arrived with his attorney and was free to leave at any time.  In their response, plaintiffs do not dispute this statement.

Defendants also note that discovery closed several years ago and that plaintiffs have taken

no depositions of parties or produced any evidence of widespread unconstitutional practices by

police officers or produced any evidence that any of the named defendants was present at the

November 23 search.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that

summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c) (2005).   Rule 56(e) provides that when a properly supported motion for summary

judgment is made, "an adverse party may not rest upon the mere allegations or denials of the

adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided

in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Summary judgment will be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no

genuine issues of material fact. Id. at 322-323.  If the moving party sustains the burden, the

nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  An issue of material fact is genuine

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Id. at 255.  In addition, "the existence of disputed issues of material fact should be ascertained by

4

resolving 'all inferences, doubts and issues of credibility against the moving party.'" Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972)).

DISCUSSION

I.      Plaintiffs' Federal Law Claims

A.      Claims against the City of Philadelphia

Defendants argue that the federal law claims against the City of Philadelphia must fail because plaintiffs have not produced any evidence that the City has a widespread practice of depriving its citizens of the right to be free from unreasonable searches and seizures.  I agree.  To prevail against the City of Philadelphia for violations of 42 U.S.C. § 1983, plaintiffs must prove that the City "supported the violation of rights alleged."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); see also Monell v. Dep't of Social Servs., 436 U.S. 658, 2036-68 (1977).  Section 1983 liability only attaches to a municipality when the injury is inflicted through the execution of the government's policy or custom.  Andrews, 895 F.2d at 1480.  A government policy is made when a policymaking decisionmaker "issues an official proclamation, policy, or edict."  Id.  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law."  Id. quoting Monell, 436 U.S. at 690.

Plaintiffs, in their response, argue that the City had customs of failing to adequately train, supervise, or discipline its police officers in the execution of arrest warrants and use of force and failing to investigate adequately complaints of excessive force against its police officers. However, plaintiffs have not offered sufficient evidence to prove that the City inflicted their

5

injuries through the execution of a policy or custom.

Plaintiffs' argument relies primarily on Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996).  In that case, Robert Beck alleged that Officer Anthony Williams engaged in police brutality and uses excessive force while arresting him and that Pittsburgh's custom of tacitly authorizing such conduct resulted in Beck's injuries and damages.  Id. at 967.  The District Court granted summary judgment, holding that Beck failed to present evidence that the City had a policy or custom that authorized its officers to use excessive force.  Id. at 970.  The Court of Appeals reversed, holding that five separate written excessive force complaints about Williams "were sufficient for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of Officer William's violent behavior in arresting citizens."  Id. at 973.

In this case, plaintiffs argue that there is a jury question regarding whether the City had an unconstitutional policy or custom of allowing its police officers to use valid arrest warrants as search warrants because of the three allegedly unconstitutional searches of the O'Neill residence. This is not enough.  Unlike Beck, plaintiffs cite to no evidence that the City knew of, should have known of, or authorized any unconstitutional searches when officers entered the O'Neill residence on November 23, 2006.  Plaintiffs did not complain to the City about the earlier searches.  They offer no evidence of other complaints made about unconstitutional searches. Further, plaintiffs also mention no other instances where the City officers used excessive force or used arrest warrants as search warrants.  Since plaintiffs have offered no proof of an official policy or custom of tolerating excessive use of force, I will grant summary judgment in favor of

6

the City on this claim.[6]

B.      Fourth Amendment Claims Against the Officers in Their Individual Capacities

"[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official,
acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham,
473 U.S. 159, 166 (1984).  Plaintiffs assert claims against the individual defendants for illegal
entry/illegal search, false imprisonment, and excessive force.  Defendants argue that: (1) the
searches were conducted pursuant to a valid arrest warrant; (2) no officers made false statements
in the affidavit in support of probable cause, (3) all the defendants reasonably believed Jason
would be found at 2910 S. 61st Street on the dates of the searches; (4) negligence cannot support
a § 1983 claim; (5) certain officers did not participate in some of the searches; (6) there is no
evidence that the named defendants used any force against the plaintiffs; and (7) the force used
by the officers was constitutionally permissible.

1.      Qualified Immunity

"Government officials performing discretionary functions generally are shielded from
liability for civil damages." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  This "qualified
immunity" applies so long as "their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known." Id.  The individual
defendants assert that they are entitled to qualified immunity.  In considering a claim of qualified
immunity I must determine (1) whether the actions of the officers violated a constitutional right;
and if so, (2) whether the right was clearly established at the time plaintiffs allege that the

_____

        [6]This grant of summary judgment also includes the claims against the officers in their
official capacity.  Kentucky v. Graham, 473 U.S. 159, 166 (1984) (noting that, in suits against
officers in their official capacity "the real party in interest is the entity").

violations occurred.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).

a.      Detective Bova

Detective Bova was the lead homicide detective in the investigation of Jason O'Neill.  In order to find an individual officer liable under § 1983, plaintiffs must show that "he participated in violating their rights, or that he directed others to violate them, or that he, as the person in charge of the raid, had knowledge of and acquiesced in his subordinates' violations."  Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir. 1995).  Although plaintiffs argue that there is "no doubt" that Detective Bova was aware of the searches and the use of SWAT to execute them, they offer no specific facts to support their argument.  Detective Bova did not participate in any of the searches.  The only fact plaintiffs mention in their response is that Detective Bova did not state that "he did not direct the above referenced unconstitutional searches or that he did not have knowledge of or acquiesce in the above referenced unconstitutional searches."  Plaintiff offer no evidence of knowledge or acquiescence; thus, they fail to set forth specific facts showing that there is a genuine issue for trial.  I will grant summary judgment to Detective Bova on the federal law claims.

b.      Illegal Search

i.      Violation of a Constitutional Right

Plaintiffs allege that Detectives Ballentine and Robison violated plaintiffs' Fourth Amendment rights by searching the O'Neill residence.  Ballentine and Robison participated in the May 30 and June 12 searches, but were searching for Jason in Delaware County during the November search.

Before police officers may enter a dwelling to execute an arrest warrant, they must have

8

"a reasonable belief that the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006) citing United States v. Gay, 240 F.3d 1222, 1226 (10th Cir. 2001).  The Court of Appeals has directed district courts to "apply a 'common sense approach' and consider 'the facts and the circumstances within the knowledge of the law enforcement agents, when viewed in the totality.'" Veal, 453 F.3d at 168 citing United States v. Magluta, 44 F.3d 1530, 1535-36 (11th Cir. 1995).

Plaintiffs have offered enough evidence to survive summary judgment; there are genuine issues of material fact as to whether Detectives Ballentine and Robison had a reasonable belief that Jason lived at 2910 S. 61st Street and whether Jason could be found at 2910 S. 61st Street on the days of the searches.  The warrant did list 2910 S. 61st Street as Jason's address and the police reportedly acted on information that Jason was in the neighborhood.  In his affidavit of probable cause for the arrest warrant, however, Detective Bova noted that Jason's last known whereabouts were in Florida.  Bernard O'Neill, in his complaint to Internal Affairs, stated that Jason had not lived at 2910 S. 61st Street for three years and that his two previous addresses were on 63rd & Elmwood and Wheeler Street.  Jason was not at 2910 S. 61st Street during the first search.  Further, the police activity sheet from May 30, 1995 described 2910 S. 61st Street as "the fugitive's father's residence."

ii.    Clearly Established

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officers that his conduct was unlawful in the situation he confronted." Id. at 202.  The law must put the officer on notice that his behavior was clearly unlawful.  Id.  In this case, there is no doubt that United States v. Veal, *supra*, clearly establishes

the general principle that police officers must have a reasonable belief that the arrestee lived in and is within the residence when they enter a dwelling to execute a search warrant.  Cf Saucier, 533 U.S. at 201.  Further, as I discussed above, the officers had significant amounts of information that Jason was (1) not living at 2910 S. 61st St.; and (2) was not present at the time of the searches.  Therefore I will not grant summary judgment on this claim.

c.      Excessive Force

Plaintiffs also assert a claim against the individual defendants for the use of excessive force.  Although "[t]he reasonableness of the use of force is normally an issue for the jury," Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004), in this case the plaintiffs' have not attributed any acts of force to any of the listed defendants.  The excessive force allegations are all directed at the SWAT team, the members of which are not named in the complaint.  Therefore, I will grant summary judgment to the defendants on this claim.

d.      Conspiracy

In their complaint plaintiffs seem to assert a conspiracy claim against the City and all individual defendants.  Once again, however, they did not offer any facts to support this claim, so I will grant summary judgment to the defendants on this claim.

II.     State Law Claims

Plaintiffs have alleged three state law intentional tort claims for: (1) assault and battery; (2) false imprisonment; and (3) intentional infliction of emotional distress.  Defendants argue that plaintiffs' state law claims against both the City and the individual defendants are barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. § 8541 et seq. (2006).

10

A.     City of Philadelphia

The PSTCA limits the liability of local government agencies and their employees, but contains some exceptions.  Id. §§ 8541, 8542.  The PSTCA provides for a limited waiver of immunity by a local agency in only eight narrowly drawn situations: (1) vehicle liability; (2) care, custody and control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody and control of animals. Id. § 8542; see also Robey v. Chester County, 946 F. Supp. 333, 338-39 (E.D. Pa. 1996) ("plaintiffs' claims must also fall within one of the eight exceptions listed in § 8542 of the Act").   Plaintiffs do not allege that their injuries were caused in any of those situations. Therefore, I will grant summary judgment to the City on the state law claims.

B.     Individual Defendants

There is no immunity, however, for officials who cause injury through "willful misconduct."  42 Pa.C.S.A. § 8550.  For police officers, "willful misconduct" is not synonymous with committing an intentional tort.  Renk v. Pittsburgh, 641 A.2d 289, 294 (Pa. 1994).  "Rather, 'willful misconduct' means that a police officer committed an intentional tort subjectively knowing that his or her conduct was wrong."  Walker v. North Wales Borough, 395 F. Supp. 2d 219, 231 (E.D. Pa. 2005).

I need not decide whether defendants are entitled to immunity because plaintiffs have not offered any facts to create a genuine issue for trial that any of the individual defendants in this case committed any of the intentional torts.  The three torts alleged by the plaintiffs all require intentional conduct.  According to plaintiffs' complaint and response to the motion for summary judgment, all the intentional torts seem to arise out of the search of November 23.  A problem

11

arises, however, because Detectives Ballentine, Bova, Robison, Lieutenant Morris and Commissioner Neal were not present during the search of November 23.  Plaintiffs do not attribute any specific acts to the individual defendants, and therefore I will grant summary judgment to defendants on this claim.

An appropriate Order follows.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD J. O'NEILL, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 97-2141 |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |

## ORDER

AND NOW, this 12th day of December 2006, after consideration of defendants' motion to dismiss, plaintiffs' response, and defendants' reply thereto, it is hereby ORDERED that defendants' motion is DENIED as to:

1.   The Fourth Amendment illegal search claim against Detective Ballentine in his individual capacity; and

2.   The Fourth Amendment illegal search claim against Detective Robison in his individual capacity.

Defendants' motion is GRANTED as to all other claims.  Judgment is entered in favor of the City of Philadelphia, Commissioner Neal, Lieutenant Morris and Detective Bova and against plaintiffs.

It is further ORDERED that trial is listed for Tuesday, January 10, 2007.

_s/Thomas N. O'Neill, Jr._
THOMAS N. O'NEILL, JR., J.